UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Aleftina Bykhovskaya,          :
        Plaintiff,             :
                               :
    v.                         :     File No. 1:07-CV-40
                               :
Michael Chertoff,              :
Secretary, Department of       :
Homeland Security,             :
        Defendant.             :

OPINION AND ORDER
(Paper 13)

Plaintiff Aleftina Bykhovskaya, proceeding *pro se* and *in forma pauperis*, brings this action claiming that she was discriminated against based upon her age and national origin when she applied for a job with the Transportation Security Administration (TSA).  The defendant has moved to dismiss or, in the alternative, for summary judgment, arguing that Bykhovskaya failed an objective, computer-scored test that was a prerequisite to her hiring, and that any claim of tampering, fraud or discrimination is purely speculative.  For the reasons set forth below, the motion for summary judgment is GRANTED.

Factual Background

From 1994 to 2002, Bykhovskaya was employed by a private company as a security screener at the airport in Burlington, Vermont.  As a result of the events of September 11, 2001, Congress passed the Aviation and Transportation Security Act ("ATSA") which required that the TSA, rather than private

companies, manage security in the nation's airports.
Consequently, Bykhovskaya and other privately-employed airport
screeners had to re-apply for their jobs.

The ATSA required that federal screening personnel be in
place by November 19, 2002.  As of that date, the TSA had
processed over 1.8 million applications, assessed
approximately 340,000 applicants and hired approximately
50,000 screeners.  The application process consisted of an
initial questionnaire, administered either online or via a
toll-free telephone number.  Once this questionnaire was
completed, the applicant was referred to an assessment center.
The in-person assessment was intended to evaluate the
applicant's mental abilities, interpersonal skills, and
physical abilities and medical condition.

The assessment was divided into two phases.  Phase I
consisted of a computer-based test, including a Competency
Inventory for interpersonal skills and English proficiency.
Phase II consisted of an interview, physical tests and a
medical evaluation.

Bykhovskaya took the Phase I computer-based test on
September 4, 2002.  She used a random ID number assigned to
her, and the test was delivered and scored remotely.  Scoring
was automated, and no TSA employees were involved in the

scoring process.  The testing in Vermont was administered by
NCS Pearson, Inc., a private contractor.

Records from Bykhovskaya's testing show that she failed
the Competency Inventory.  Having received a failing score in
Phase I, she should not have been allowed to proceed to Phase
II.  Nonetheless, personnel at the assessment center
erroneously instructed her to proceed to Phase II.  The
government submits that in Phase II, Bykhovskaya failed the
physical performance assessment.

Two days after her testing, an unnamed TSA employee
contacted Bykhovskaya and informed her that she had not passed
the tests and consequently would not be able to work as a
security screener.  She now claims that after the testing was
completed, the TSA decided not to hire her because of her age
and the fact that she is Russian.  She argues that she did, in
fact, pass the Phase I testing, as she would not have been
allowed to proceed to Phase II if Phase I had not been
successful.  She claims that personnel at the assessment
center could not have simply misread her test result, and that
the sequence of events suggests that the TSA took two days to
determine that she should not be hired due to her age and
national origin.

Bykhovskaya further claims that she was not the only
person who suffered discrimination.  Prior to 2002, two

private companies provided security screening services at the
Burlington airport.  From the first company, JFS, 27 of 30
applicants were awarded positions with TSA.  From
Bykhovskaya's employer, ITS, only seven of 26 applicants were
hired.  The complaint alleges that among those not hired, some
came from foreign countries and spoke with accents.

Bykhovskaya challenged the TSA's action by making
inquiries to the TSA and presenting a claim to the EEOC.  When
she asked for her test scores, she was initially told that the
results were not saved and therefore could not be shown to
her.  However, in 2005, she was provided copies of her test
results.[1]  Those results confirm that she failed various
portions of the test.

In response to Bykhovskaya's claims, the defendant has
submitted an affidavit from Ann Quigley, a TSA employee since
2002 and currently the Deputy Director for Metrics and
Analysis in the Office of Human Capital.  Quigley has over 20
years of experience in the field of industrial-organizational
psychology, with special expertise in employment selection and
the use of cognitive and non-cognitive assessments.  In 2002,

---

[1]  The defendant submits that because the tests were
administered by a private company, the database of test
results was not provided to TSA until after that company's
2002 contract concluded.  (Paper 17 at 2).

4

she helped the TSA develop the assessment process for hiring security screeners under the ATSA.

Quigley testifies that Bykhovskaya met the initial requirements for hiring and was referred to an assessment center, but failed the Competency Inventory.

> Given her test results on the Competency Inventory, Ms. Bykhovskaya should have been dismissed from the assessment process after the computerized testing phase of the process as candidates were required to pass the Competency Inventory to [proceed] to the next portion of the process.  However, it appears she was mistakenly allowed to continue to Phase 2 . . . .  Irrespective of this administrative error, Ms. Bykhovskaya's Phase 1 test results were determinative.  Ms. Bykhovskaya was not eligible for consideration for employment based on failing portions of the computerized test.

(Paper 11, Quigley Dec., at 11-12).  A checklist completed by interviewers on the date of the testing shows that Bykhovskaya was disqualified ("DQ") on the Computer Assessment Results and the Physical Performance Assessment.  (Paper 11-8).  It remains unclear why Bykhovskaya was not informed until two days later that she had failed the assessment tests.

## Discussion

The defendant has filed a motion to dismiss, or in the alternative for summary judgment.  The motion is accompanied by a statement of undisputed facts, and by the required notice to a *pro se* party.  Consequently, the plaintiff was on notice that the motion might be treated as one for summary judgment. Because the Court will consider the facts and exhibits offered

5

in the motion, as well as the plaintiff's substantive responses, the Court construes the filing as a motion for summary judgment.

Summary judgment should be granted only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact.  <u>See</u> <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002); <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995) (stating that movant may meet the burden by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim.")  Once the movant satisfies this burden, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

In determining whether summary judgment is appropriate, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  <u>Williams v. R.H. Donnelley, Corp.</u>, 368 F.3d 123, 126 (2d Cir. 2004).  "In addition, <i>pro se</i> litigants must be given extra latitude, particularly on a summary judgment motion."  <u>Thomas v. New</u>

York State Dep't of Corr. Servs., 2006 WL 435718, at *4
(S.D.N.Y. Feb. 23, 2006) (citing McPherson v. Coombe, 174 F.3d
276, 280 (2d Cir. 1999) (*pro se* pleadings should be read
liberally and interpreted "to raise the strongest arguments
that they suggest")).

Bykhovskaya alleges that she was discriminated against
based upon her age and national origin.  Federal law provides
that "[i]t shall be unlawful for an employer to fail or refuse
to hire or to discharge any individual . . . because of such
individual's age."  29 U.S.C. § 623(a)(1).  Discrimination
based upon national origin is similarly barred.  See 42 U.S.C.
§ 2000e-2(a).  In age and national origin cases that do not
involve direct or overt evidence of discrimination, courts
apply the three-part burden-shifting analysis set forth in
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).
See, e.g., Gmyrek v. Metropolitan Life Ins. Co., 2007 WL
2403205, at *3 (E.D.N.Y. Aug. 20, 2007).  First, the plaintiff
must establish a *prima facie* case of discrimination.  The
burden of production at this stage of the inquiry is
"minimal," and satisfying it does not require actual evidence
of discrimination.  James v. N.Y. Racing Ass'n, 233 F.3d 149,
153 (2d Cir. 2000).  A *prima facie* case is established when
the plaintiff produces some evidence that (1) she is a member
of a protected class; (2) she is qualified for her position;

(3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

If the plaintiff sets out a *prima facie* case of discrimination, she is "then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006).  In responding to the defendant's showing, the plaintiff cannot overcome summary judgment unless she shows "that the articulated non-discriminatory reason for the defendant's action is in fact a pretext for discrimination." McDonnell Douglas, 411 U.S. at 804-05.

The defendant argues that Bykhovskaya cannot meet the requirements for a *prima facie* case because she was not qualified for the position, and that she has no evidence of pretext.  "Whether an individual is 'qualified' for a job must be assessed in relation to the criteria the employer has specified for the position, not criteria that seem reasonable to the litigant, or to this Court." Sarmiento v. Queens

<u>Coll.</u>, 386 F. Supp. 2d 93, 97 (E.D.N.Y. 2005) (citing <u>Thornley</u> <u>v. Penton Publ'g, Inc.</u>, 104 F.3d 26, 29 (2d Cir. 1997)). Here, the general standards for employment were established by statute.  Specifically, the ATSA required that security screeners "possess basic aptitudes and physical abilities," including sufficient aptitude in English to be able to read "identification media," provide direction to people undergoing screenings, write incident reports, and otherwise "courteously, vigilantly, and effectively perform screening functions."  49 U.S.C. §§ 44935(f)(1)(B), (f)(1)(C) and (f)(5)(C).

The defendant has submitted evidence showing that Bykhovskaya failed the tests required for employment.  In response, Bykhovskaya suggests that the evidence is, at best, suspicious.  Mere suspicion, however, is insufficient.  While this Court must draw reasonable factual inferences in favor of the non-moving party at summary judgment, "'[a]n inference is not a suspicion or a guess.  It is a reasoned, logical, decision to conclude that a disputed fact exists on the basis of another fact [that is known to exist].'"  <u>Bickerstaff v.</u> <u>Vassar Coll.</u>, 196 F.3d 435, 448 (2d Cir. 1999) (quoting 1 Leonard B. Sand, et al., Modern Federal Jury Instructions ¶ 6.01, instr. 6-1 (1997)).

9

Bykhovskaya relies on circumstantial evidence to support her claim.  Her evidence, however, does not lead to a reasonable inference of discrimination.  Her discrimination claim is based, almost entirely, upon the fact that she was allowed to proceed past Phase I of the assessment process.  The defendant claims that this was an error by the company that administered the test.  Bykhovskaya believes that there was no error, that she passed the test and was denied employment illegally.

The facts at summary judgment establish that the test in question was objective and computerized.  The test did not require information about Bykhovskaya's age or national origin, and was scored remotely.  The test was administered by employees or agents of a private contractor, and the results were then submitted to the TSA.  Two days after testing, Bykhovskaya received a call informing her that she would not be hired.  She now claims that, given the two-day delay and her belief that individuals at the assessment center could not have misread her test result, there was discrimination.[2]

---

[2]   In her complaint, Bykhovskaya also allows for the possibility that there was an error by the testing administrator.  As she writes in the complaint, " . . . I should be employed in TSA as has passed all stages of process, or the center has broken own instructions and should be punished . . . .  I have no desire to be responsible for your mistakes and should be accepted in TSA as security screener." (Paper 5-2).

Bykhovskaya also suggests that others of foreign descent were discriminated against.  She has not shown, however, that any of the applicants who failed the tests in Phase I were offered employment.  While she concedes this point, she argues that she did, in fact, pass the tests in Phase I, and therefore need not make such a showing.

A summary judgment motion will not be defeated on the basis of some "metaphysical doubt" concerning the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  In this case, Bykhovskaya's theory of discrimination is unsupported by any facts in the record. Making all reasonable inferences in her favor, her circumstantial support for a claim of discrimination is insufficient.  Accordingly, the Court finds that Bykhovskaya has failed to set forth a *prima facie* case of discrimination. Moreover, even assuming a *prima facie* showing, the defendant has articulated a non-discriminatory reason for not hiring her, and Bykhovskaya's evidence does not show that the articulated reason was merely a pretext for discrimination. Therefore, the defendant's motion for summary judgment is GRANTED.

11

<u>Conclusion</u>

For the reasons set forth above, the defendant's motion for summary judgment (Paper 13) is GRANTED and this case is DISMISSED.

Dated at Brattleboro, in the District of Vermont, this 3rd day of December, 2007.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge